UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATSY S. BOYD, ET AL.                          CIVIL ACTION

VERSUS                                         NO: 15-0025

BOEING CO., ET AL.                             SECTION: "A" (4)

### ORDER AND REASONS

Before the Court is a **Motion to Remand, or, Alternatively, To Sever and Remand the State-Law Based Claims Against the Other Defendants (Rec. Doc. 17)** filed by plaintiffs Patsy S. Boyd, Wayne P. Boyd, Wheldon J. Boyd, and Elizabeth Legasse, as the heirs of Wheldon J. Boyd, Sr. ("Boyd").  Defendants The Boeing Company ("Boeing") and United Technologies Corporation ("UTC") have each filed an opposition to the motion.  The motion, set for hearing on March 11, 2015, is before the Court on the briefs without oral argument.

### I.   BACKGROUND

The instant case was originally filed by Plaintiffs in the 25th Judicial District Court for the Parish of Plaquemines, Louisiana.  Plaintiffs allege that the decedent contracted malignant mesothelioma as a direct and proximate result of having inhaled, ingested, or otherwise been exposed to asbestos. Decedent was diagnosed with mesothelioma on December 3, 2013 and died on March 30, 2014.  According to Plaintiffs, decedent's asbestos exposure occurred during his time as a civilian flight

mechanic at the "Belle Chasse Air Force Base" (*i.e.*, Naval Air Station Joint Reserve Base New Orleans) from "the early 1950s through []1979." During this time, decedent worked on F-100 and F-102 jets assembled by a company now incorporated into Boeing with engines developed by a division of UTC. Plaintiffs allege that the engine and other component parts of the plane contained asbestos, in addition to parts of the hangars in which the planes were stored. Plaintiffs allege that Defendants knew or should have known of the dangers presented by asbestos, but failed to warn decedent about such dangers and even actively concealed the dangers. Defendant Boeing was served with Plaintiffs' Petition on December 8, 2014, and filed its Notice of Removal (Rec. Doc. 1) with this Court on January 7, 2015.

In the Petition, Plaintiffs allege that the "products mined, manufactured, sold, distributed, supplied, and/or used by these defendants were defective" due to: 1) the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se; 2) the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the [decedent] who would be foreseeably exposed to them []as a result of their intended use; 3) lack of

2

warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use; 4) lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products; 5) failure of [D]efendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions; 6) failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users; 7) failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users; 8) failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available; 9) defects in the composition and construction of these products; 10) failure to recall these products mined, manufactured, sold, distributed and/or supplied; 11) failure to properly package these products so that they could be safely transported, handled, stored or disposed of; 12) overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and 13) liability to Petitioner in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure that have caused

3

harm to Petitioner.

Plaintiffs conclude that these defects and Defendants' negligence were the proximate causes of decedent's injuries.

Via the instant motion, Plaintiffs move to remand this case to state court.  Plaintiffs urge that the Court lacks subject matter jurisdiction over this case because Defendants cannot meet the requirements for removal set forth in 28 U.S.C. § 1442(a)(1).  In the alternative, Plaintiffs seek to have their state law claims against the other defendants severed and remanded.

## II.  <u>LEGAL STANDARD</u>

Federal courts are courts of limited jurisdiction.  *Howery v. Allstate Insurance Co.*, 243 F. 3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)).  The Court must assume that a suit lies outside this limited jurisdiction until jurisdiction is established.  *Id.*  When a case is removed from state court, the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *DeAguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1994); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812 (5th Cir. 1993) (per curiam); *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1988)).

4

Given that Boeing removed the suit to this court,[1] it bears the burden of establishing a basis for federal subject matter jurisdiction.  Any doubt regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction and in favor of remand.  *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)(citing *Willy*, 855 F.2d at 1164).  Defendant has invoked jurisdiction under 28 U.S.C. § 1442(a)(1), asserting that at the time of the alleged failure to warn, Boeing was acting under the direction and control of the United States Government.

28 U.S.C. § 1442(a)(1), the federal officer removal statute, provides that removal is permitted in any case in which the defendant is the United States "or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."  28 U.S.C. §1442(a)(1).  The statute is designed to protect officers of the federal government, who when acting pursuant to authority granted them under federal law,

---

[1] UTC then joined in the removal.  (Rec. Doc. 5).  As removal under 28 U.S.C. § 1442 applies to all claims and parties, and as for purposes of the present motion UTC's interests are aligned with those of Boeing, the Court will not address the arguments of each opposition separately.  *See Fowler v. So. Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965)("[T]he filing of a petition for removal by a single federal officer removes the entire case to the federal court.").

run afoul of the laws of a state. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir.1998) (quoting *Willingham v. Morgan,* 395 U.S. 402 (1969)). One of the most important functions of this right of removal is to allow a federal court to determine the validity of an asserted official immunity defense. *Id.* The Supreme Court has held that this right is "not to be frustrated by a grudgingly narrow interpretation of the removal statute"; its broad construction and the unique purpose of the statute require that it be "liberally construed." *Willingham*, 395 U.S. at 407; *State of La. v. Sparks*, 978 F.2d 226, 232 (5th Cir.1992) (noting Supreme Court requirement of liberal interpretation for over two decades); *Watson v. Philip Morris Companies, Inc.* 551 U.S. 142 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510 (1932)).

### III. __ANALYSIS__

Federal officer removal is appropriate where 1) the defendant is a "person" within the meaning of the statute; 2) the defendant acted pursuant to a federal officer's directions when committing the acts that allegedly give rise to the injury at issue; and 3) the defendant can assert a colorable defense. *Winters*, 149 F.3d at 397 (quoting *Willingham*, 395 U.S. 402).

The parties do not dispute that Boeing, as a corporation, is a person within the meaning of §1442(a)(1). *See id.* at 398.

Under the second prong, § 1442(a)(1) applies to governmental

6

contractors when they can demonstrate a "causal nexus" between the plaintiffs' claims and the acts performed under the "color of federal office." *Mesa v. California*, 489 U.S. 121, 131–32 (1989). The "color of federal office" prong should not be construed narrowly, but does require "a federal interest in the matter." *Winters*, 149 F.3d at 398 (quoting *Mesa*, 489 U.S. at 139). Prior decisions analyzing what constitutes federal direction have required more than "general auspices" of a federal officer, or participation in a regulated industry. *Mouton v. Flexitallic, Inc.*, no. 99-0162, 1999 WL 225438, at *1 (E.D. La. April 14, 1999). Instead, the defendant must show "strong government intervention and the threat that a defendant will be sued in state court" based on actions which follow federal direction. *Id.*

Plaintiffs cite several cases in which courts granted motions to remand where an individual was exposed to asbestos at whole or in part on a private employer's premises while performing work pursuant to a government contract's specifications. *See, e.g.*, *Francis v. Union Carbide Corp.*, no. 11-2695, 2011 WL 6180061 (E.D. La. Dec. 13, 2011); *Sheppard v. Northrop Grumman Systems Corp.*, no. 07-2208, 2007 WL 1550992 (E.D. La. May 24, 2007); *Gauthe v. Asbestos Corp.*, no. 96-2454, 1997 WL 3255 (E.D. La. Jan. 2, 1997); *Westbrook v. Asbestos Defs. (BHC)*, no. 01-1661, 2001 WL 902642 (N.D. Cal. July 31, 2001);

7

*Overly v. Raybestos-Manhattan*, no. 96-2853, 1996 WL 532150 (N.D. Cal. Sept. 9, 1996); *Ruffin v. Armco Steel Corp.*, 959 F. Supp. 770 (S.D. Tx. 1997), *vacated*, 1999 WL 318023.  Those cases involved, at least in part, a basis in premises liability and a focus on claims that defendant failed to properly warn the plaintiff about the conditions and otherwise failed to implement proper safety procedures.  *Id.*  Most importantly, the courts granted remand either exclusively or substantially for the following reason: "[T]he government, at a minimum, had to provide some level of direct control over warnings and the defendant failed to establish that this was the case.  This in turn negated the existence of a causal nexus . . . ."  *Cole v. Northrop Grumman Ship Systems, Inc.*, no. 07-3049, 2008 WL 2651428, at *4 (E.D. La. July 7, 2008)(collecting some of the same and similar cases).

This case is distinguishable and demands a different result. Boeing provided the affidavit of Mr. Nolan H. Leatherman ("Leatherman").[2]  Leatherman, a mechanical engineer by training, acquired over thirty years of experience in "reviewing,

---

[2] Plaintiff has not supported its argument that Defendant's failure to include this evidence with its notice of removal renders its removal invalid.  The Court has found no precedent to suggest this nor do the relevant statutes imply this.  *See* 28 U.S.C. 1442, 1446. Boeing properly responded with such evidence when its removal was challenged via motion to remand.  *See Winters*, 149 F.3d at 397 ("[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy.").

negotiating, and dealing with government contracts for military aircraft procurement" as a design engineer, as a specification engineer, and eventually as the Manager in Contracts and Pricing Department, all at North American Aviation Columbus (since merged into Boeing). (Rec. Doc. 25-48; ¶¶2-6). His knowledge includes "the review and approval of detail specifications and related [g]overnment specifications and standards; the [g]overnment's exclusive control over the designs and specifications of, including any marking or warnings about, the equipment to be installed as part of the manufacturing process; and the involvement of [g]overnment personnel in inspection and testing of military aircraft before being released to service." *Id.* at ¶8.

According to this record document evidence, the government exercised control over all aspects of the production of the F-100, including what warnings were to be included on which parts. The point does not need to be unduly belabored at this stage of the proceedings beyond pointing to a few relevant examples.[3]

_____

[3] For the same reason, the Court will not lengthen the record by going into great detail as to the additional distinctions between this case and others in which remand has been granted. Here, the claims extend beyond merely failure to warn claims. *See* (Rec. Doc. 1-1) (listing claims, including those for strict liability); *c.f.*, *Sheppard*, 2007 WL 1550992 (finding the absence of a strict liability claim was a factor supporting remand). Further, the government had its own engineers and staff embedded at the Boeing facilities to oversee all aspects of the production process. (Rec. Doc. 25-48; ¶¶45-50). Also, decedent incurred the injuries on the government base, not on Boeing's premises.

Leatherman unequivocally testified that Boeing manufactured these aircraft according to exacting specifications set forth by the government. *Id.* at ¶18.  The government provided Boeing several component parts of the aircraft and allowed Boeing no control over those parts, requiring Boeing to only install them as provided. *E.g., id.* at ¶26-30, 33-36, 57-61, 66.  The government's control extended to the warnings, and many of the parts "were supplied to Boeing . . . with the warnings and labels already affixed.  Boeing was not permitted to add, delete or modify warnings related to this equipment." *Id.* at ¶27.  These same restrictions applied to the relevant manuals and related materials for the F-100. *E.g., id.* at ¶60.  This is sufficient to establish that Boeing was acting under federal direction regarding actions which Plaintiffs claim caused or contributed to the injuries at issue.[4]

The third requirement for federal officer removal is that the defendants must show that they have a colorable defense under federal law. *Winters*, 149 F.3d at 400 (citations omitted).  The Fifth Circuit has held that the defendants need not prove the asserted defense, but need only articulate its "colorable"

---

[4] Given this evidence of explicit direction, the Court does not determine today if or what lower threshold of government control might suffice to fulfill these elements. *C.f. Najolia v. Northrop Grumman Ship Systems, Inc.*, 883 F. Supp. 2d 646, 658 (E.D. La. 2012) ("[T]here is authority for the proposition that even if the Navy did not expressly prohibit asbestos warnings a finding of a colorable defense may properly be made.").

applicability to the plaintiff's claims.  As the Supreme Court stated in *Willingham*, "[t]he officer need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407.

The Supreme Court set out the elements for one such defense, the government contractor defense, in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).[5]  To establish a colorable defense, the defendant must establish that 1) the United States approved reasonably precise specifications; 2) the equipment conformed to those specifications; and 3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.  *Id.* at 511.  Relatedly, and as antecedents, the defendant must also show that the case concerns a uniquely federal interest and that a significant conflict exists between the federal mandate and state law duties as applied to the case. *Id.* at 504-08.

Addressing first these latter two issues, the procurement of military equipment, such as the F-100, is a uniquely federal

---

[5] Plaintiffs' contention that the government contractor defense is inapplicable in "failure to warn" cases is unsupported.  The cases cited by Plaintiffs denied the defendants' recourse to the government contractor defense due to the facts of that particular case, not because the defense was unavailable as a matter of law. *See, e.g.*, *Westbrook*, 2001 WL 902642, at *3 ("But Todd has not shown that the Navy required it to refrain from issuing warnings.  Absent such a showing, Todd has no colorable military contractor defense to a failure to warn claim.").  Another case frequently referenced by Plaintiffs noted that "the Fifth Circuit has held that the [government contractor defense] could also be applied in failure to warn cases." *Ruffin*, 959 F. Supp. at 774.

interest. *Id.* at 506-07.  The warnings placed on the equipment
and in manuals, not to mention any of Plaintiffs' other claims,
go directly to the technical specifications mandated by the
government and thus to the procurement of the aircraft.  (Rec.
Doc. 25-48; ¶¶2-6).  Additionally, such direction by the
government directly interferes and creates a conflict with any
state law duty to warn incumbent on Defendants more expansive
than that discharged by the government-regulated warnings.  *See*
*Kerstetter v. Pac. Scientific Co.*, 210 F.3d 431, 438 (5th Cir.
2000).

As has been reviewed above, the government did not just
provide reasonably precise specifications; it provided the exact
language, and in some cases, even the relevant parts with the
only-permitted warning language already included.  *See, e.g.*, *id.*
at ¶26.  Boeing's conformity to these specifications, via its
contractual obligation to implement and follow the government's
directions as recounted by Leatherman, has not been questioned.
*See id.* at ¶19.[6]  Boeing has also produced evidence that
throughout the relevant time periods, particularly beginning in
the 1940s and regarding military aircraft, the government

---

[6] Additionally, the Court finds it premature to engage in a
detailed analysis at this point as to whether precise conformity was
achieved.  *See Najolia*, 883 F. Supp. 2d at 658 (noting, in analyzing a
motion to remand, that "it is too early to engage in an evidentiary
challenge to whether the turbines conformed precisely to the Navy's
specifications").

possessed state-of-the-art knowledge and expertise "relating to
work[ing] with or around asbestos-containing materials and
products" that was "superior to that of companies manufacturing
military aircraft and aircraft components." (Rec. Doc. 25-33, at
¶15). Further, as discussed earlier, the government provided
parts for Boeing to install that Boeing had no role in
manufacturing and no basis for specialized knowledge regarding
such a part's potential dangers. Thus, Boeing has made a showing
that it did not fail to warn the government about dangers which
it knew about but the government did not. Boeing can therefore
make a colorable claim of the applicability of a federal defense
in this case.

As a final attempt to avoid the ramifications of the federal
officer removal statute in this case Plaintiffs argue that the
Court should take the disclaimer in their Petition into
consideration. In their Petition filed in state court,
Plaintiffs included the following language:

> Plaintiffs disclaim[] any cause of action or
> recovery for any injuries caused by any
> exposure to asbestos dust that occurred in a
> federal enclave. Plaintiffs also disclaim any
> cause of action or recovery for any injuries
> resulting from any exposure to asbestos dust
> caused by any acts or omissions of a party

committed at the direction of an officer of

the United States Government.

(Rec. Doc. 1-1, at 3-4).

Plaintiffs point to the *Sheppard* case, in which that court noted a disclaimer with the exact same language and then remanded the case. *Sheppard*, 2007 WL 1550992, at *6-7. The difference though is that the disclaimer in that case was just one of several factors favoring remand. That court had already found that the defendants could not show that they were acting under the direction of a federal officer; that there was a sufficient causal nexus; or that there was a colorable federal defense. *Id.* at 5-6. Only after making such findings did the *Sheppard* court then consider the disclaimer language. *Id.* at 6-7. Further, the plaintiff in that case did not merely include such language in his petition; he also sought to amend his petition to remove product liability and strict liability claims while the matter was still pending in state court. *Id.* at 1; *see also Meyers v. Chesterton*, no. 15-0292, 2015 WL 2452346 (E.D. La. May 20, 2015)(finding such a disclaimer effective under similar facts and where the plaintiff personally verified the binding nature of the disclaimer).

In this case, based on the Court's above findings, Plaintiffs rely on this disclaimer in the Petition as the only factor in favor of remand. The Court finds persuasive the

reasoning in cases such as *In re Asbestos Prods. Liability Litig.*, 770 F. Supp. 2d 736 (E.D. Pa. 2011); *Corley v. Long Lewis, Inc.*, 668 F. Supp. 2d 1315 (N.D. Ala. 2010).  The "federal officer" should be able to have a federal court make a determination on the existence of federal subject matter jurisdiction.  *In re Asbestos Prods. Liability Litig.*, 770 F. Supp. 2d at 742.  Further, based on these facts, unlike in *Sheppard*, it seems likely that the defendants will rely at least in part on a government contractor defense, and they should have the ability to have this matter decided by a federal court. *Winters*, 149 F.3d at 397-98 ("[T]he Supreme Court has noted that one of the most important functions of this right to removal is to allow a federal court to determine the validity of an asserted official immunity defense."); *Corley, Inc.*, 668 F. Supp. 2d at 1335-36.  The Court will not grant remand on the disclaimer alone.

Finally, Plaintiffs ask in the alternative, should the Court deny the motion to remand, that the claims against the other defendants be severed and remanded.  Plaintiffs point to 28 U.S.C. § 1441(c) which provides for the remand of additional claims "not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute."  Plaintiffs note the related legislative history which explained that this section's language "permit[s] removal of the

case but require[s] that a district court remand unrelated state law matters."  H.R. Rep. No. 112-10, at 12 (2011).  Plaintiffs conclude with the broad statement that such severing and remanding is always within the discretion of this Court.

The cited statutory language, as applied to this case, does not require severing and remanding any of the other claims.  Such claims do not fall under the language of § 1441(c)(B) nor has it been explained how any of the other claims are "unrelated."  To the contrary, it appears that all claims are intimately related to those made against the removing defendants.  The Court chooses not to sever and remand any matters at this time based on judicial economy.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Remand (Rec. Doc. 17)** filed by Plaintiffs is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Strike Declarations attached to Rec. Doc. 4 (Rec. Doc. 18)** filed by Plaintiffs is **DENIED AS MOOT**.

This 14th day of July 2015.

JAY C. ZAINEY

UNITED STATES DISTRICT JUDGE

16